UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY BOATWRIGHT, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No.: 1:10-cv-03902 ) Judge Castillo ) |
| WALGREEN COMPANY, | ) ) |
| Defendant. | ) |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE CLASS ALLEGATIONS FROM PLAINTIFFS'
AMENDED COMPLAINT

Defendant's Motion to Strike Class Allegations from Plaintiffs' Amended Complaint should be denied. Plaintiffs' classwide allegations of discriminatory discharge are not inherently individualized. There are statistically significant patterns of discrimination against discharged black employees and Defendant has a very subjective process for making discharge decisions.

I.  The Pleading Standard and Mandate of a "Rigorous Analysis"

In *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982), the Supreme Court admonished that the court should make a "rigorous analysis" of whether the elements of Rule 23(a) are present in evaluating whether to certify a class. This standard applies equally to those seeking and resisting class action treatment. The Defendant's attempted pre-emptive strike motion violates this principle.

Rigorous analysis of Rule 23(a) elements requires development of an adequate record. *Goodman v. Schlesinger*, 584 F.2d 1325 (4th Cir. 1978). To develop an adequate record, "a certain amount of discovery is essential in order to determine the class action issue." *Pittman v. E.I. DuPont de Nemours & Co.*, 552 F.2d 149, 150 (5th Cir. 1977);

*Doniger v. Pacific Northwest Bell*, 564 F.2d 1304 (9th Cir. 1977); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, (11th Cir. 1996), *cert. denied*, 117 Sup. Ct. 1082 (1997).

Defendant's Motion to Strike is essentially a motion for partial judgment on the pleadings, but Defendant has attached three affidavits to support its position. Rule 12(c) mandates that "if matters outside the pleadings are presented…the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56." Rule 56(f) requires that no adjudication shall take place if there is inadequate opportunity for the party opposing the motion to oppose the motion because of lack of access to the facts. The court may order discovery to create a level playing field, and Plaintiffs respectfully submit that justice requires no less in responding to Defendant's Motion to Strike.

Defendant cites *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) in support of a new heightened pleading standard. Defendant also cites *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008) which actually supports Plaintiff's argument. Contrary to Defendant's suggestion, notice pleading is still the rule in federal courts. *See Twombly*, 127 S. Ct. at 1964 (explaining that the statement offer sufficient factual allegations to "give the defendant fair notice of what the…claim is and the grounds upon which it rests."); *Ashcroft*, 129 S.Ct. at 1954 (explaining that Rule 9(b)'s pleading-with-particularity standards were not being extended to Rule 8(a)). In *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008), the Seventh Circuit reminded:

> We have previously stated, on numerous occasions, that a plaintiff alleging employment discrimination…may allege these claims *quite generally*. A complaint need not allege all, or any of the facts logically entailed by the claim. Indeed, litigants are entitled to discovery before

2

> being put to their proof, and treating the allegations of the complaints as a statement of the party's proof...defeats the function of Rule 8.
>
> \*\*\*
>
> We have also cautioned that *Bell Atlantic* must not be overread...the Court in Bell Atlantic made clear that it did not, in fact, supplant the basic notice-pleading standard....A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show it is plausible...that he is entitled to relief.

*Id.* at 1081-1083 (emphasis added).

Following *Tomayo*, this Court recently held that "an employment discrimination case must satisfy notice pleading requirements; specific facts establishing a prima facie case of employment discrimination are not required." *Horgan v. Simmons*, --- F.Supp.2d ----, 2010 WL 1434317 * 4 (N.D.Ill.2010)(denying motion to dismiss). The Court in *Horgan* explained that a plaintiff in a discrimination case must only overcome the "two easy-to-clear hurdles" necessary to survive a motion to dismiss: (1) defendants have notice of the claims and the grounds on which they rest; and (2) the allegations suggest that plaintiff has a right to relief. *Id.* (citing *Tamayo,* 526 F.3d at 1084).

Defendant's reliance on *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 777 (7th Cir. 2007) is puzzling, given that *Concentra Health* recites from *Twombly*: "Rule 8(a)(2)'s 'short and plain statement of the claim' must contain a minimal level of factual detail, <u>although that level is indeed very minimal</u>. *See Bell Atlantic,* <u>127 S.Ct. at 1964-65</u> & n. 3 (2007)." (underline added); *accord, Madison v. City of Chicago*, 09 C 3629 (N.D. Ill) (Shadur, J.) (Order of August 10, 2009).

II. **The Plaintiffs Can and Have Satisfied the Requirements of Rule 23(a)**

    A. **There are Factual and Legal Requirements Common to the Class**

3

1.   **Seventh Circuit Law on Classes Alleging Discrimination in Discharge**

Defendant argues that "discharge claims like the plaintiffs' are <u>inherently</u> ill-suited for class treatment." Defendant's Motion to Strike, p. 8 (emphasis added). This argument completely ignores two prominent Seventh Circuit cases which certified classwide discriminatory discipline claims, *Coates v. Johnson & Johnson*, 756 F.2d 524 (1985) and *Mozee v. Jeffboat, Inc.*, 746 F.2d 365 (7th Cir 1984).

In *Coates v. Johnson & Johnson*, 756 F.2d 524 (1985), the district court certified a class of black employees that alleged a pattern and practice of discrimination in the "highly discretionary discipline-discharge-reinstatement system." The plaintiff sought and obtained certification of class action status for these claims. *Id.* at 530. After trial the district court rejected the plaintiff's individual and class claims on the merits. The Seventh Circuit affirmed finding that the trial court's evaluation of the statistical proof was not clearly erroneous, but that it was a "close case." *Id.* at 553. There was no intimation in *Coates* that class certification for a class of blacks alleging discrimination in discharges was inappropriate.

In *Mozee v. Jeffboat, Inc.*, 746 F.2d 365 (7th Cir 1984), the trial court certified a class alleging discrimination against the black employees in compensation, promotion, discipline and other practices. The analysis of discipline was much more complicated than that in the existing case because there was a collective bargaining contract and specific levels of infractions each with an attendant consequence. *Id.* at 367-68. The trial court rejected the plaintiffs' claims, including those with regard to discipline. The Seventh Circuit reversed.

The district court held that disciplinary decisions were made on a case by case basis and that the plaintiffs' substantial statistical evidence was not probative. The appellate court rejected this analysis, and speaking directly to patterns of discipline, stated that statistical proof could be "an effective means of measuring the cumulative effects of employment decisions and that statistically significant disparities in treatment of comparably situated persons are often quite probative of unlawful discrimination." *Id.* at 372. The Court went on to note that when "the statistical pool consists of persons already employed by the defendant, courts have sometimes assumed that desirable employee traits are evenly distributed among the relevant pool." *Id.* (citation omitted). The Court remanded for reassessment of the plaintiffs' statistical proof. There was no hint that the subclass alleging discrimination in discipline was inappropriate.

On remand the district court held for the plaintiff class that the pattern and practice of discharging blacks at a much higher rate under the defendant's subjective discharge system was racially discriminatory and the defendant appealed. *Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036, 1043-44 (7th Cir. 1991). The court noted that if an employer has a progressive disciplinary system, failure of the plaintiff to take such into account in its analysis "may detract from the significance of the statistics." *Id.* at 1047. Here, it should be noted that Defendant does not have an objective, progressive disciplinary system. To the contrary, as alleged in Plaintiff's First Amended Complaint, Defendant uses a "subjective methodology for making discharge decisions regarding Black employees [that] has had an unjustified disparate impact on Black employees." Doc. 15, ¶ 20.

5

The court in *Mozee* affirmed the findings of liability in promotions but remanded the discipline findings to allow the trial court to adequately evaluate what impact the prior disciplinary actions of the progressive system had on the discharge statistics. There was no hint that the sub-class of discharged persons was in any way inappropriate. Indeed, the remand affirms the propriety of the certification.[1]

Plaintiffs' discharge claims are in line with *Coates* and *Mozee* and are not inherently individualized. Plaintiffs and all members of the putative class were subject to Defendant's subjective discharge process that consistently, year after year, job after job, produces a statistically significant pattern of discharges from which the Court can infer a pattern and practice of discrimination.

2. **The Strong Litigation Value of Class Action Treatment for Each Plaintiff and Putative Class Member**

Contrary to Defendant's assertion, each of the named Plaintiffs and putative class members has a valuable stake in class certification and proof of a pattern and practice of racial discrimination. The trial would be bifurcated. In the first stage, only the question of the classwide pattern and practice would be at issue.

Proof of individual merits is reserved for the second stage of the bifurcated proceedings. If the Plaintiffs succeed in proving a pattern and practice, the burden of proof shifts in stage II proceedings. *Teamsters v. United States*, 431 U.S. 324, 360-61 (1971)(§ 707(a)); *Franks v. Bowman Transp. Co.*, 424 U.S. 727 (1976)(Rule 23); *Council*

---

[1] *See also Smith v. Nike Retail Services, Inc.*, 2006 U.S. Dist. LEXIS 12375 (N.D. Ill. 2006) (certified class with a sub-class of blacks alleging discrimination in application of workplace rules).

6

*31 v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992)(citing *Teamsters*); *Coates v. Johnson & Johnson*, 756 F.2d 524, 532 (1985).[2]

### 3. Multiple Facilities and Decision-makers Are Not an Impediment to Commonality

Defendant argues that because the discharge decisions were made by different decision-makers at different locations, there can be no commonality. Defendant's Motion to Strike, pp. 9-10. They support this argument by citing four district court cases, but the discussion might better begin with the Supreme Court's holding in *Bazemore v. Friday*, 478 U.S. 385 (1986). In *Bazemore,* the Supreme Court vacated the trial court's failure to certify a statewide class of extension service employees, even though the 100 unrelated County Extension Boards were crucial in the salary setting practices at issue. The case was remanded with a strong admonition that the class should probably be certified. *Bazemore*, 478 U.S. at 405-06.

There has been certification of a great number of nationwide and multi-state classes with unrelated decision-makers, and virtually all of these have involved subjective decision-making. *See Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3d Cir. 1975) (approved a nationwide class of women suffering from discrimination in selection of positions in the claims department); *Kilgo v. Bowman Transport Inc.*, 789 F.2d 859, 870 n. 13 (11th Cir. 1986) (approved a company-wide class which included operations in 16 states); *Butler v. Home Depot, Inc.*, 70 FEP 10 (N.D. Cal. 1996) (certified a class of

---

[2] The burden-shifting rule has also been applied when the plaintiffs prove a pattern and practice of discrimination in non-class cases. *King v. General Electric Co.*, 960 F.2d 617, 628 (7th Cir. 1992); *Barnes v. GenCorp, Inc.*, 896 F2d 1457 (6th Cir.), *cert. denied*, 498 U.S. 878 (1990).

women in the western region which encompassed 10 states); *Wynn v. Dixieland Foods, Inc.*, 125 F.R.D. 696 (M.D. Ala. 1989) (certified a class that included more than 50 stores with very decentralized subjective decision-making); *Keeler v. Hills*, 73 F.R.D. 10 (N.D. Ga. 1976) (certified a class of all women GS-5 and above suffering gender discrimination in Region IV which encompassed the entire southeastern United States).

### 4. Defendant's Subjective Decision-making System Is Supportive of Commonality

Courts have consistently held that a subjective decision-making system provides commonality under subsection (a)(2). *Caridad v. Metro-North Commuter RR*, 191 F.3d 283, 291-93 (2d Cir. 1999); *Green v. USX*, 896 F.2d 801 (3d Cir. 1990); *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326 (4th Cir. 1983); *Evans v. United Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985); *Richardson v. Byrd*, 709 F.2d 1016 (5th Cir.), *cert. denied*, 464 U.S. 1001 (1983); *Shipes v. Trinity Industries*, 987 U.S. 311, 316 (5th Cir.), *cert. denied*, 114 Sup.Ct. 548 (1993); *Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003)(rejecting an attempt by objectors to de-certify a class that covered 27 states).

Again, Plaintiffs adequately demonstrate this key component of commonality in the First Amended Complaint by alleging that Defendant's "subjective methodology for making discharge decisions regarding Black employees has had an unjustified disparate impact on Black employees and facilitated the intent to treat Black employees in a discriminatory manner." Doc. 15, ¶ 20.

### B. The Claims of the Plaintiffs Are Typical of Those of the Putative Class

As the Supreme Court has recognized, "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13. Typicality will be present if the plaintiffs and the putative class suffer from a common policy – in this case a policy of racial discrimination in discharges. *See Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987); *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985). Again, Defendant misconceives the nature of bifurcated proceedings in class actions and the benefit of burden-shifting to the class. *See* Section (A)(2), *supra*.

### C. The Plaintiffs Are Adequate Representatives

Rule 23(a)(4)'s adequacy requirement involves the satisfaction of two factors: (1) the plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation[3] and (2) the plaintiffs' interest are not antagonistic to those of the rest of the putative class and they will pursue the litigation for the class.[4] *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Defendant argues that having putative class members who may supervise other class members creates a conflict. This view has been

---

[3] Plaintiffs' counsel from Foland, Wickens were lead counsel in *Tucker v. Walgreen Co.*, Case No. 05-cv-440 (S.D. Ill.), a race class action alleging discrimination in promotions and assignments and have other class action experience. Co-counsel Kent Spriggs has litigated primarily Rule 23 class actions for more than 40 years and has written extensively on the subject in "Representing Plaintiffs in Title VII Actions."

[4] Each of the Plaintiffs has been counseled about the nature of class actions and the quasi-fiduciary duty each class representative assumes. Each has agreed to this responsibility. There are no conflicts between them as the representative plaintiffs and the putative class.

9

consistently rejected. Illustrative of its rejection are all the cases cited in II (A)(3), *supra*, and this is but a small sample.

Defendant misapprehends the nature of Stage I of bifurcated proceedings which would attend a certified class action. Stage I would determine whether there was a pattern or practice of discrimination and would not turn of the merits of the claims of the individual class representatives.[5] Defendant cannot conflate two stages into one.

### III. Certification Is Appropriate Under Subsection (b)

#### A. Certification Under (b)(2)

Defendant states that it is "undeniable that plaintiffs' predominant objective is not injunctive relief." Defendant's Motion to Strike, p. 15. This is incorrect. Keeping within the guidelines of *Lemon v. International Operating Engineers*, 216 F.3d 577 (7th Cir. 2000), there are a number of kinds of equitable relief which would be sought and which are appropriate. Significantly, systemic injunctive relief is available to stop the pattern and practice of discriminatory discharges. *Bridgeport Guardians, Inc. v. Delmonte*, 248 F.3d 66 (2d Cir. 2001). Plaintiffs specifically sought this relief in asking the Court to "enjoin Walgreens from engaging in the same or like practices in the future." First Amended Complaint Prayer for Relief, Doc. 15, p.23.

Defendant argues that Plaintiffs do not have "standing" to seek injunctive relief because they are no longer employed. This bootstrap argument could only be true if every single Plaintiff and class member were unsuccessful in challenging his or her

---

[5] Further evidence that the Defendant's expressed concerns about the adjudication of the claims of the representatives being an impediment to class treatment is the affirmance by the Seventh Circuit of the findings of liability of each of the five named plaintiffs whose claims were <u>much</u> more disparate than those of these Plaintiffs. *Mozee*, 940 F.2d at 1039-1042.

10

discharge.[6] Successful individual Plaintiffs and class member would be entitled to reinstatement, *Brusco v. United Air Lines, Inc.*, 239 F.3d 848 (7th Cir. 2001); *Farber v. Massillon Board of Education*, 917 F.2d 1391, 1396 (6th Cir. 1990), cert. denied, 498 U.S. 1082 (1991), and/or clearing of their employment records from the inscription that they were discharged. *Brusco, supra.*

Back pay and front pay would also be appropriate remedies for successful Plaintiffs and class members. *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975); *Suggs v. ServiceMaster Education Food Management*, 72 F.3d 1228 (6th Cir. 1996)(front pay). Though monetary, back pay and front pay have historically been classified as equitable relief in Title VII jurisprudence. *Provencher v. CVS Pharmacy*, 145 F.3d 5, 10-11 (1st Cir. 1998); *Thomas v. Department of Criminal Justice*, 297 F.3d 361 (5th Cir. 2002). This was reflected in the case law and the fact that back pay and the exclusion of front pay from the "damage caps" in the 1991 Amendments to Title VII, § 102(b)(2).

Under *Jefferson v. Ingersoll International, Inc.*, 195 F.3d 894 (7th Cir. 1999) and *Lemon v. International Union of Operating Engineers*, 216 F.3d 577 (7th Cir. 2000), a variation on (b)(2) is suggested. The court could certify the class under (b)(2) for both equitable and monetary relief, but exercise its plenary authority under Rule 23(d)(2) and (d)(5) to provide all class members with notice and an opportunity to opt out. *Lemon, supra* at 582. This would satisfy a major concern of the *Lemon* court.

---

[6] Even if this were true, an unsuccessful single hiring plaintiff was granted systemic relief in *Thomas v. Washington County School Board*, 915 F.2d 922 (4th Cir. 1990). The doctrine of non-class plaintiffs having standing to seeking systemic relief is generally believed to have been first articulated by the Seventh Circuit. *Sprogis v. United Air Lines*, 444 F.2d 1194 (7th Cir.). cert. denied, 404 U.S. 991 (1971).

In *Allen v. International Truck & Engine Corp.*, 358 F.3d 469 (7th Cir. 2004), the Seventh Circuit reversed the decision of the district court which found the elements of Rule 23(a) had been satisfied, but felt that none of the options under subsection (b) were appropriate. The Court of Appeals ordered the district court to certify on remand a (b)(2) class for equitable matters and "reconsider the extent to which damages matters also could benefit from class treatment." *Id.* at 472. The case is also notable because the variability in damages was extensive. It was a harassment case in which the court acknowledged that some class members may have been subjected to "pervasive harassment" while others may have "seen little or heard little of the offensive material." *Id.* at 471. In the instant case, every Plaintiff and putative class member shares one specific employment injury – being discharged.

B.  **Certification Under (b)(3)**

Under *Jefferson v. Ingersoll International, Inc.*, 195 F.3d 894 (7th Cir. 1999) and *Lemon v. International Union of Operating Engineers*, 216 F.3d 577 (7th Cir. 2000), the proof of the pattern and practice of racial discrimination in discharges with its attendant burden-shifting is quite sufficient to meet the common question predomination test of (b)(3). Notable, these decisions show that the Seventh Circuit essentially led the country in the wake of the 1991 Amendments to Title VII in holding that employment discrimination class actions seeking compensatory damages under (b)(3) could be certified (contrary to some other circuits).

Because the class may shift the burden if successful in Stage I proceedings, class action treatment is clearly "superior to other available" methods of a fair adjudication of

the controversy. The facts which Plaintiffs are able to plead in addition to those in the instant complaint are recited in IV (B), *infra* – and this is with no discovery.

### C. Hybrid Certification Under (b)(2)/(b)(3)

*Jefferson, supra*, and *Lemon, supra*, permit hybrid certification. Stage I could be certified and tried under (b)(2). For those claiming compensatory damages, such damages could be addressed in Stage II under (b)(3) which provides for personal notice and an opportunity to opt out.

### IV. THE PLAINTIFFS INTEND TO MOVE FOR LEAVE TO AMEND THE COMPLAINT

The Title VII jurisdiction has recently matured for two of the Plaintiffs who have alleged a nationwide pattern and practice of discrimination of discharging black employees at Walgreens. Following their Opposition to Defendant's Motion to Strike, Plaintiffs will seek leave to amend to add Title VII jurisdiction, opening up disparate impact litigation in this case for the first time. Further, Plaintiffs will insert additional class facts in the proposed second amended complaint to be submitted with the Motion for Leave to Amend.

### A. Disparate Impact Analysis

The Complaint was filed alleging intentional discrimination under Section 1981. Plaintiffs Boatwright and McWhite filed timely charges alleging a nationwide pattern of discrimination against blacks in discharges with the EEOC. Each is entitled as a matter of law to a notice of right-to-sue by the passage of time. Each has requested a right-to-sue from EEOC. McWhite's is in hand. Boatwright's has been promised to counsel.

13

It is the Plaintiffs' intention to seek leave to add Title VII jurisdiction. This will allow the Plaintiffs to prove up a pattern of disparate impact, which differs from disparate treatment in that the Plaintiffs need only prove up as statistically disparate impact of a policy and no inference of discriminatory intent is necessary. In this case, the policy at issue would be the policy of discriminatory discharge which is extremely subjective. Since there is no progressive discipline system or other components of the discharge process which are capable of separate analysis, the discharge process can be analyzed statistically as one employment practice.

There is no question that a subjective policy is amenable to disparate impact analysis. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988). This doctrine has been used to attack almost every kind of subjective employment practice, but its application to a subjective discharge pattern is most germane to this case. *Giancoletto v. Amax Zinc Co.*, 954 F.2d 424 (7th Cir. 1992). If the practice is found to have discriminatory impact, the defendant would have the burden of showing a "compelling need" for the observed disparities. *Bradley v. Pizzaco of Nebraska, Inc.*, 7 F.3d 795 (8th Cir. 1993)(construing the 1991 Amendments to Title VII).

### B. What the Plaintiffs Will Plead Concerning the Statistical Proof of Discrimination

In the Amended Complaint attached to the upcoming Motion for Leave to Amend the Plaintiffs will plead:

- On information and belief, Defendant continues to maintain an electronic data base in which discharges (i.e., involuntary terminations) are separated from

14

voluntary terminations, thus making it unambiguous to isolate what in the company's view is a discharge.[7]

- The database ascribes 13 different reasons for discharges.

- Some of the reasons for discharge are relatively objective, such as invalid social security number or failure to complete immigration form, however, the vast majority of discharges are for very subjective reasons.

- The majority of all discharges are coded "confidential." The second most common code is violation of company policy. Both have the attribute of being subjective and lending themselves to decision-makers having the opportunity to discriminate illegally.

- The rate of discharging blacks is significantly statistically higher than whites.

- This pattern continues year after year.

## V. CONCLUSION

Plaintiffs' allegations are not inherently individualized. To the contrary, Plaintiffs' First Amended Complaint properly alleges classwide claims of discriminatory discharge, and Plaintiff's Second Amended Complaint, upon leave for filing by the Court, will reinforce those class allegations with Title VII disparate impact claims and additional information regarding the significant statistical disparities among black and white discharge rates resulting from terminations unfettered by written, objective termination criteria. Defendant's Motion to Strike is without merit and should be denied.

---

[7] The Plaintiffs' counsel reviewed multiple years of Defendant's nationwide electronic personnel database during discovery in *Tucker v. Walgreen Co.* The data discovered covers a multi-year period which ends essentially at the commencement of the actionable period for this putative class. The pleadings are on information and belief but are extrapolations of years of nationwide patterns already analyzed in *Tucker*.

Respectfully submitted,

SPRIGGS LAW FIRM

/s/   *Kent Spriggs*
Kent Spriggs          (*Pro Hac Vice*)
2007 W. Randolph Cir.
Tallahassee, Florida  32308
(850) 224-8700 (*telephone*)
*kspriggs@spriggslawfirm.com*

and

Amy L. Coopman       (*Pro Hac Vice*)
W. James Foland      (*Pro Hac Vice*)
Lauren Perkins Allen (*Pro Hac Vice*)
911 Main Street, 30th Floor
Kansas City, Missouri 64105
(816) 472-7474 (*telephone*)
*acoopman@fwpclaw.com*
*jfoland@fwpclaw.com*
*lallen@fwpclaw.com*

and

Kristin M. Case, Bar No. 6274676
Kathleen Sedey, Bar No. 6300819
The Case Law Firm, LLC
150 N. Michigan Avenue, Suite 800
Chicago, IL  60601
(312) 920-0400
(312) 920-0800
kcase@thecaselawfirm.com
ksedey@thecaselawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system to:

Sari M. Alamuddin
Charles C. Jackson
Andrew Scroggins
Allison N. Powers
Morgan Lewis & Bockius LLP
77 W. Wacker Drive
Chicago, IL 60601
(312) 324-1000
(312) 324-1001 (facsimile)
SAlamuddin@MorganLewis.com
CJackson@MorganLewis.com
Andrew.Scroggins@MorganLewis.com
Apowers@morganlewis.com

/s/*Kent Spriggs*
Attorneys for Plaintiffs